UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANGEL VARGAS, FELIX BONILLA, RYAN MCKENZIE,
BERNARDO RAMIREZ and SIMON NORALES,

                        Plaintiffs         COMPLAINT
                                                      JURY TRIAL DEMANDED
   -Against-                                                      07-3343

MIDTOWN AIR CONDITION AND
VENTILATION, LTD.,

                        Defendant
------------------------------------------------------------X

      Plaintiffs, ANGEL VARGAS, FELIX BONILLA, RYAN MCKENZIE, BERNARDO RAMIREZ, and SIMON NORALES by their attorneys, LAW OFFICES OF AMBROSE WOTORSON, allege as follows:

    I.      INTRODUCTION

    1.      This is an action pursuant to 42 U.S.C. Section 1981, *et seq.*, the New York State Constitution, The New York City Human Rights Law, and the New York State Human Rights Law, to vindicate the civil and commercial rights of plaintiffs. Plaintiffs -- all of whom are either Black or Hispanic -- contend that defendant discriminatorily altered the terms, conditions, and privileges of their employment on account of their races and national origins. As well, plaintiffs contend that they were terminated, in part, because they reasonably complained that they were being paid less than similarly-situated Caucasian workers and in derogation of New York's prevailing wage law. Plaintiffs were replaced by individuals who were Caucasian and of primarily Russian national origin.

1

II.  JURISDICTION

2. This Court has jurisdiction over this action under 42 U.S.C. Section 1981, *et seq*. Venue is proper, as the operative events occurred within this judicial district. Prior to commencement of this action, plaintiffs served a copy of this complaint upon the New York City Commission of Human Rights in accordance with N.Y.C. Administrative Code Section 8-502(c). Moreover, the New York Comptroller's Office issued a determination in 2006 on plaintiffs' prevailing wage claims, and that determination is un-reviewed.

III.  PARTIES

3. ANGEL VARGAS (hereinafter, "plaintiff") who resides in Hackensack, New Jersey, hereby sues on his own behalf, and at all relevant times, he was employed with the defendant. He was 51 years old at the time of his termination.

4. FELIX BONILLA (hereinafter, "plaintiff") who resides in Bronx, New York, hereby sues on his own behalf, and at all relevant times, he was employed with the defendant. He was 49 years old at the time of his termination.

5. RYAN MCKENZIE (hereinafter, "plaintiff") who resides in White Plains, New York, hereby sues on his own behalf, and at all relevant times, he was employed with the defendant. He was 31 years old at the time of his termination.

6. BERNARDO RAMIREZ (hereinafter, "plaintiff") who resides in Kings County, New York, hereby sues on his own behalf, and at all relevant times, he was employed with the defendant. He was 36 years old at the time of his termination.

7. SIMON NORALES (hereinafter, "plaintiff") who resides in Bronx County, New York, hereby sues on his own behalf, and at all relevant times, he was employed with the defendant. He was 45 years old at the time of his termination.

8.  Defendant, MIDTOWN AIR CONDITION AND VENTILATION, LTD, at all relevant times maintained a principal place of business at 545 Eight Avenue, 6th Floor, New York, 10018, and at all relevant times, defendant entered into performance contracts with the City of New York.

IV.  FACTUAL AVERMENTS

9.  **Facts relating to Angel Vargas**

    a.  Plaintiff, Angel Vargas, is a 53-year old man of Puerto Rican national origin and descent.

    b.  Angel Vargas began working for defendant on or about February 1995.

    c.  Defendant terminated Angel Vargas on or about February 28, 2006.

    d.  Angel Vargas was initially hired as an AC mechanic/ steam-fitter for $10.00/hour. He got steady raises of $1.50 each year. At the time of his termination, Angel Vargas was making $20.50 an hour.

    e.  On information and belief, Angel Vargas' pay, on City of New York contracts, as a sheet metal mechanic, was below the prevailing wage and hours for similarly-situated sheet metal mechanics in and for the City New York.

    f.  Moreover, upon information and belief, defendant paid Angel Vargas less than its other similarly-situated workers who were white.

    g.  Further, the prevailing wage, at all relevant times for NYC was about $39-$40 an hour.

    h.  An Inspector from the New Y9rk City Comptroller's Office (hereinafter, "inspector") visited defendant's job site in June 2005.

    i.    Angel Vargas spoke with the inspector and the inspector told plaintiff that he was being underpaid.

    j.    Roman Lieberstein, Angel Vargas' supervisor, later told plaintiff that he had become aware that an inspector had been on the job site. Lieberstein then asked plaintiff what had said to the inspector.

    k.    Angel Vargas truthfully told Liberstein that the inspector informed him that he was being underpaid. He also told Liberstein that he and the other plaintiffs in the instant action were interested in pursing prevailing wage and discrimination claims, and that he had cooperated fully with the inspector.

    l.    Thereafter, Vargas began to receive received utterly pretextual disciplinary memoranda.

    m.    Angel Vargas was laid off in March 2006, and was replaced by a Caucasians of Russian national origin.

10.    **Facts relating to Felix Bonilla:**

    a.    Felix Bonilla is a 49-year old man of Honduran national origin.

    b.    Defendants had hired Felix Bonilla in June 2003, and he was terminated on November 21, 2005.

    c.    Felix Bonilla was initially hired as a mechanic for $12.00/hour. Plaintiff got steady raises of $1.00 each year. At the time of his termination, plaintiff was making $14.00 an hour.

    d.    On information and belief, Felix Bonilla's payment, at all relevant times, was below the standard wage and hours for similarly-situated mechanics

4

    in New York City.  Indeed the prevailing wage, at all relevant times was about $39-$40 an hour. Moreover, defendant paid Felix Bonilla less than its similarly-situated Caucasian workers.

  e. An Inspector from the New York City Comptroller's Office visited defendant's job site in June 2005.

  f. Felix Bonilla spoke with the inspector and the inspector told plaintiff that he was being underpaid. Thereafter, Felix Bonilla sent several documents to this inspector pursuant to potential prevailing wage and discrimination claims.

  g. Roman Lieberstein, Felix Bonilla's supervisor, later told him that he had become aware that an inspector had been on the job site. Lieberstein then asked Felix Bonilla what had said to the inspector.

  h. Felix Bonilla truthfully told Liberstein that the inspector informed him that he was being underpaid. Felix Bonilla also told Liberstein that he and the other plaintiffs in the instant action were interested in pursing prevailing wage and discrimination claims, and that he had cooperated fully with the inspector.

  i. After Felix Bonilla informed Liberstein about his meeting with the inspector, plaintiff was "laid for "and was never called back to work. On information and belief, plaintiff was replaced by a similarly-situated Caucasian worker of Russian descent.

11. **<u>Facts relating to Ryan McKenzie</u>**

  a. Ryan McKenzie is a 31 year-old man of Jamaican national origin.

b. Defendant hired Ryan McKenzie in September 2003, and it terminated him on November 21, 2005.

c. Ryan McKenzie was initially hired as a sheet metal mechanic for $15.00/hour. He got steady raises of $1.50 each year. At the time of his termination, Ryan McKenzie was making $20.00 an hour. On information and belief, Ryan McKenzie payment, at all relevant times, was below the standard wage and hours for similarly-situated sheet metal mechanics on City of New York contracts in New York. Indeed the prevailing wage, at all relevant times was about $39-$40 an hour. Moreover, defendant paid Ryan McKenzie less than its similarly-situated Caucasian workers.

d. An Inspector from the New York City Comptrollers Office visited the site on June 2005. Ryan McKenzie spoke with the inspector and the inspector told plaintiff that he was being underpaid.

e. Roman Lieberstein, Ryan McKenzie supervisor, later told him that he had become aware that an inspector had been on the job site. Lieberstein then asked Ryan McKenzie what had said to the inspector.

f. Ryan McKenzie truthfully told Liberstein that the inspector informed him that he was being underpaid. He also told Liberstein that he and the other plaintiffs in the instant action were interested in pursing prevailing wage and discrimination claims, and that they had cooperated fully with the inspector.

g. On December 21, 2005, plaintiff, Ryan McKenzie was "laid off," and replaced by a Caucasian worker of Russian national origin.

13. **Facts relating to Bernardo Ramirez:**

   a. Bernardo Ramirez is a 36 year-old man of Honduran national origin.

   b. Defendant hired Bernardo Ramirez in June 1999, and it terminated him on February 28, 2006.

   c. Bernardo Ramirez was initially hired as a "helper" at $7.00/hour. He got steady raises of $1.00 each year. At the time of his termination, Bernardo Ramirez was making $19.00 an hour as a mechanic. On information and belief, Bernardo Ramirez's payment as a mechanic, on City of New York contracts was below the standard wage and hours for similarly-situated mechanics in New York City.  Indeed the prevailing wage, at all relevant times was about $39-$40 on City of New York contracts.

   d. Moreover, defendant paid Bernardo Ramirez less than its similarly-situated Caucasian workers.

   e. An Inspector from the New York City Comptrollers Office visited the site on June 2005.  Bernardo Ramirez spoke with the inspector and the inspector told him that he was being underpaid.

   f. Roman Lieberstein, Bernardo Ramirez's supervisor, later told plaintiff that he had become aware that an inspector had been on the job site. Lieberstein then asked Bernardo Ramirez what had said to the inspector.

   g. Bernardo Ramirez truthfully told Liberstein that the inspector informed him that he was being underpaid. He also told Liberstein that he and the other plaintiffs in the instant action were interested in pursing prevailing wage and discrimination claims, and that they had cooperated fully with

7

       the inspector.

   h. Thereafter, Bernardo Ramirez received approximate 4-5 disciplinary memos on lateness and departure times that, on information and belief were designed to create a paper trial justifying his eventual termination.

   i. Bernardo Ramirez was terminated on February 28, 2006 and he was immediately replaced by a similarly-situated Caucasian worker of Russian national origin.

14. **Facts relating to Simon Norales:**

   a. Simon Norales is a 45 year-old man of Honduran national origin.

   b. Defendant hired Simon Norales in 1996, and it terminated him on February 28, 2006.

   c. Simon Norales was initially hired as sheet metal mechanic at $18.00/hour. He got steady raises of $1.00 each year. At the time of his termination, Simon Norales was making $25.00 an hour. On information and belief, plaintiff's payment as a mechanic, on City of New York contracts was below the standard wage and hours for similarly-situated mechanics in New York City. Indeed the prevailing wage, at all relevant times was about $39-$40 on City of New York contracts.

   d. Moreover, defendant paid Simon Norales less than its similarly-situated Caucasian workers.

   e. An Inspector from the New York City Comptrollers Office visited the site on June 2005. Simon Norales spoke with the inspector and the inspector told plaintiff that he was being underpaid.

      f.      Roman Lieberstein, Simon Norales' supervisor, later told plaintiff that he had become aware that an inspector had been on the job site. Lieberstein then asked Simon Norales what had said to the inspector.

      g.      Simon Norales truthfully told Liberstein that the inspector informed him that he was being underpaid. Simon Norales also told Liberstein that he and the other plaintiffs in the instant action were interested in pursing prevailing wage and discrimination claims, and that they had cooperated fully with the inspector.

      h.      Simon Norales never received any disciplinary memoranda or any reprimands indicating his work was sub-standard.

      i.      Still, Simon Norales was summarily terminated on February 28, 2006 and he was immediately replaced by a similarly-situated Caucasian worker of Russian national origin.

15.    As a further proximate result of defendant's illegal acts towards plaintiffs, plaintiffs will suffer a loss of earnings, bonuses and other employment benefits.

16.    As a further proximate result of defendant's illegal actions towards plaintiffs, plaintiffs have suffered impairment and damage to plaintiffs' good names and reputations.

17.    As a further proximate result of defendant's illegal actions towards plaintiffs, plaintiffs have suffered mental anguish and emotional injury.

18.    As a further proximate result of defendant's illegal actions towards plaintiffs, plaintiffs has been unable to find comparable employment with comparable pay, despite their best efforts to do so, and have all suffered extraordinary consequential damages as a result..

19. Defendant's actions were willful, outrageous and were malicious, and were intended to injure plaintiffs, and were done with reckless indifference to plaintiffs' protected rights, entitling plaintiffs to punitive and/or liquidated damages.

V. CAUSES OF ACTION

FIRST CAUSE OF ACTION

20. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

21. By discriminating against plaintiffs on account of their races and alienages, and account of their good faith complaints about discrimination, defendant violated 42 U.S.C. Section 1981 *et seq*.

SECOND CAUSE OF ACTION

22. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

23. By discriminating against plaintiffs on account of their races, alienages and national origins, and on account of their good faith complaints about discrimination, defendant violated Section 296 of the New York Human Rights Law.

. THIRD CAUSE OF ACTION

24. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

25. By discriminating against plaintiffs on account of their races, alienages and national origins, and on account of their good faith complaints about discrimination, defendant violated New York City Human Rights Law Section 8-107(1)(a).

FOURTH CAUSE OF ACTION

26. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

27. By refusing to pay plaintiffs the prevailing wages for similarly-situated mechanics with City of New York contracts, defendants willfully violated Article I, Section 17, of the New York State Constitution, and Labor Law Section 220 et seq., (as made actionable by New York Labor Law Section 220(8)).

VI. PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court grant to them judgment containing the following relief:

a. Awards of damages to be determined at the time of trial to compensate plaintiffs for mental anguish, humiliation, embarrassment, and emotional injury;

b. Awards of punitive and/or liquidated damages to be determined at the time of trial;

c. An award of reasonable attorney fees and the costs of this action and,

d. Such other and further relief as this Court may deem just and proper; and

e. Reinstatement or any other equitable relief available, including an injunction against the adverse actions complained of herein.

Dated: Brooklyn, New York
April 24, 2007

Respectfully Submitted,
Law Offices of Ambrose Wotorson, P.C.
By_____/s/_____
Ambrose W. Wotorson (AWW—2412)
26 Court Street
Suite 1811

Brooklyn, New York 11242

718-797-4861