# EXHIBIT A

# LOCAL 810, I.B.T.

## AGREEMENT WITH

## MIDTOWN AIR CONDITIONING, INC.
### Division of Ilam Industries, Ltd.

## September 1, 2003 - August 31, 2006

Local 810, I.B.T.
10 East 15th Street
New York, New York 10003
Telephone No.: (212) 691-4100

Louis Smith, President

AHW000212

## MIDTOWN AIR CONDITIONING, INC.
### Division of Ilam Industries, Ltd.

## C L A U S E S

|  | ARTICLE |
|---|---|
| Recognition | I |
| Bargaining Unit | II |
| Coverage | III |
| No Discrimination | IV |
| Union Status | V |
| Checkoff | VI |
| New Employees | VII |
| Hours of Work | VIII |
| Overtime | IX |
| Wages and Classifications | X |
| Holidays | XI |
| Vacations | XII |
| Seniority | XIII |
| Leave of Absence | XIV |
| Discharge | XV |
| Picket Lines | XVI |
| Injury on the Job | XVII |
| Health and Welfare Plan, Pension Plan and Annuity | XVIII |
| Union Representation | XIX |
| Grievance Procedure | XX |
| Arbitration Procedure | XXI |
| Strike and Lockout | XXII |
| Bulletin Boards and Telephone | XXIII |
| Alteration of Agreement | XXIV |
| Mourning Period | XXV |
| Sick Leave | XXVI |
| Uniforms | XXVII |
| Posting | XXVIII |
| Bargaining Unit Work | XXIX |
| Captions | XXX |
| Lie Detector Test | XXXI |
| Employer Notice Obligation/Liability | XXXII |
| Term of Agreement | XXXIII |
| Saving Clause | XXXIV |
| Schedule "A" - Wage Schedule and Classifications | |

AWW000213

<u>MIDTOWN AIR CONDITIONING, INC.</u>
<u>Division of Ilam Industries, Ltd.</u>

### I N D E X

ALTERATION OF AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
ARBITRATION PROCEDURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
BARGAINING UNIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
BARGAINING UNIT WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
BULLETIN BOARDS AND TELEPHONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
CAPTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
CHECKOFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
COVERAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
DISCHARGE AND DISCIPLINE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
EMPLOYER NOTICE OBLIGATION/LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
GRIEVANCE PROCEDURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
HEALTH & WELFARE PLAN, PENSION PLAN AND ANNUITY . . . . . . . . . . . . . . . . . . . . 8
HOLIDAYS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
HOURS OF WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
INJURY ON THE JOB . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
LEAVE OF ABSENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
LIE DETECTOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
MOURNING PERIOD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
NEW EMPLOYEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
NO DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
OVERTIME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
PICKET LINES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
POSTING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
RECOGNITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
SAVING CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
SENIORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
SICK LEAVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
STRIKE AND LOCKOUT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
TERM OF AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
UNIFORMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
UNION REPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
UNION STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
VACATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
WAGE SCHEDULE AND CLASSIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
WAGES AND CLASSIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

AWW000214

**AGREEMENT MADE AND ENTERED INTO** as of the 1st day of September, 2003, by and between **MIDTOWN AIR CONDITIONING, INC.,**, Division of Ilam Industries, Ltd. of 545 8th Avenue, New York, New York 10018, hereinafter referred to as the **"Employer"** and **LOCAL 810, STEEL, METALS, ALLOYS AND HARDWARE FABRICATORS AND WAREHOUSEMEN**, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, of 10 East 15th Street, New York, New York 10003, its successors or assigns, hereinafter referred to as the **"Union"**.

## PURPOSE

The purpose of this Agreement is to establish mutual understanding and a harmonious relationship between the Employer and the Union, so that continuous and efficient service may be rendered to the Employer and a fair standard of terms and conditions of employment may be guaranteed to the employees.

## NOW, THEREFORE, BE IT AGREED

## ARTICLE I

## RECOGNITION

1.0    The Employer recognizes the Union as the sole and exclusive bargaining agent for the purposes of bargaining in respect to rates of pay, wages, hours of employment and all other conditions pertaining to employment of all of the employees in the bargaining unit hereinafter set forth.

## ARTICLE II

## BARGAINING UNIT

22.0    The following shall be the appropriate collective bargaining unit: All production and maintenance employees as set forth in Schedule "A".

## ARTICLE III

## COVERAGE

3.0    The terms and conditions of employment contained in this Agreement shall be binding upon the successors and assigns of the Employer. The Employer shall be individually liable for the compliance with the terms and conditions herein.

## ARTICLE IV

## NO DISCRIMINATION

4.0    In accordance with applicable law, the Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, pregnancy, or age, nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, pregnancy or age.

4.1    The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's lawful activity and/or support of the Union.

AWW000215

4.2     The term "he" or "his" as used in this Agreement is not meant to be discriminatory and shall apply equally to male and female employees.

## ARTICLE V

## UNION STATUS

5.0     It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the execution date of this Agreement shall remain members in good standing, and those who are not shall, on or after the thirtieth (30th) working day following the said date, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered hereunder and hired on or after the execution date hereof, shall, on or after the thirtieth (30th) working day following the beginning of such employment, become and remain members in good standing in the Union.

## ARTICLE VI

## CHECKOFF

6.0     The Employer agrees that during the full term of this Agreement and any extension or renewal thereof, it will deduct in the first week in every month from the earnings of the employees who have so authorized, in writing, and in accordance with the provisions of said authorization, membership dues (which term includes initiation fees) and remit the same to the Union. The remittance shall be accompanied by a list showing individual names and amounts deducted. The total remittances are to be made not later than the fifteenth (15th) day of the same month. The Union shall advise the Employer of the amount of initiation fees and dues and the manner in which the same shall be deducted.

6.1     The Employer shall notify the Union of all new employees covered by this Agreement, within seven (7) days after hire giving name, address, social security number and date of hire.

6.2     In the event an employee or the Union provides the Company with a valid checkoff card, and the Company fails to check off the initiation fee and dues as required under the provisions of the collective bargaining agreement, the Company agrees that if the employee leaves the employ of the Company before such checkoff can be made, the Company will remit the amount it failed to check off, but reserves the right to seek indemnification from the former employee.

## ARTICLE VII

## NEW EMPLOYEES

7.0     All new employees engaged by the Employer shall be deemed for the first forty-five (45) working days of their employment to be engaged for a trial period. All such new employees may be laid off or dismissed during such trial period for any reason whatsoever. After the said trial period, all employees shall be deemed to be regular employees covered by the terms of this Agreement, and their seniority shall revert back to the date of hire.

AWW000216

## ARTICLE VIII

## HOURS OF WORK

8.0      The normal work week shall be forty (40) hours per week, consisting of five (5) days of eight (8) hours per day, exclusive of the lunch period.

8.1      The regular work week shall be from Monday to Friday, inclusive.

8.2      The regular work shift shall start at 7:30 A.M.  The lunch period shall be one-half (½) hour in duration, between the hours of 11:30 A.M. to 1:30 P.M.

8.3      Starting time may be changed by the Employer by giving the employees and the Union twenty-four (24) hours notice.

Notice shall be given to the employees by posting the same on the bulletin board.  The twenty-four (24) hour notice may be waived where it will cause undue hardship on the Employer. The Union shall have the right to utilize the grievance procedure if such change creates an undue hardship on the employees.

8.4      Call-In Time:  In the event an employee reports for work on his regular shift without having been previously notified not to report, he shall be given two (2) hours work, or if no work is available, he shall be given two (2) hours pay.

8.5      Call-Back Time:  Any employee called back to work after the termination of his regular shift who has left the plant and the Employer's grounds shall receive no less than three (3) hours work.

## ARTICLE IX

## OVERTIME

9.0      All overtime shall be paid at the rate of time and one-half (1½) the regular straight time rate.

9.1      · In addition to the holiday pay, time and one-half (1½) shall be paid for all work performed on any of the holidays as designated in Article XI, Holidays, herein in this Agreement.

9.2      Employees working the second shift shall receive a ten percent (10%) increase over their regular rates.

9.3      Employees shall receive overtime pay if driving more than one and one-half (1½) to and from a job.

## ARTICLE X

## WAGES AND CLASSIFICATIONS

10.0      All employees employed on the dates specified shall receive the following wage increases:

| | | | |
|---|---|---|---|
| September 1, 2003 | Forty Cents (40¢) | March 1, 2005 | Forty Cents (40¢) |
| March 1, 2004 | Sixty Cents (60¢) | September 1, 2005 | Eighty-five Cents (85¢) |
| September 1, 2004 | Eighty-five Cents (85¢) | March 1, 2006 | Forty Cents (40¢) |

10.1      The aforesaid general increases shall be added to the starting and minimum rates as provided in Exhibit "A" annexed hereto.

10.2    Employees working outside of the shop shall be compensated as has been the custom and practice of the Employer as heretofore. Outside the shop shall mean employees working outside of the metropolitan area.

10.3    No employee shall suffer a reduction in pay or other economic benefits as a result of the signing of this Agreement for the term hereof.

Employees working in more than one classification will be paid the rate of the highest classification.

10.4    The Employer shall notify the Shop Steward of the name, classification and starting rate of each employee. No new employee shall be hired at less than the minimum rate for his classification as provided in Exhibit "A".

## ARTICLE XI

###  HOLIDAYS

11.0    All employees covered by this Agreement shall receive holiday pay for each of the following designated holidays not worked, irrespective of the day of the week on which the holiday may fall, at the rate of eight (8) hours pay at their base rates of pay or in the case of employees who are regularly scheduled eight (8) hours per day, eight (8) hours at their base rate of pay.

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| Presidents' Day | Day After Thanksgiving |
| Memorial Day | Christmas Eve (½ Day) |
| Independence Day | Christmas Day |
| Labor Day | New Year's Eve (½ Day) |

Above holidays may be substituted for other days by agreement of the Employer and employees.

Employees employed for a period of one to three (1-3) years shall be entitled to one (1) personal day off with pay each year of the Agreement. Employees employed for a period of three to ten (3-10) years shall be entitled to two (2) personal day off with pay each year of the Agreement. Employees employed ten (10) years or more shall be entitled to three (3) personal days off with pay each year of the Agreement.

11.1    In addition to the payment of time and one-half for hours worked on any of the above designated holidays as provided in overtime provisions, all employees working on such holidays shall receive holiday pay as set forth in Article 11.0 hereinabove.

11.2    Any of the specified holidays falling on a Sunday shall be celebrated the following day (Monday) and the above mentioned requirements of time or pay shall be applicable in such case to Monday instead of Sunday.

AWW000218

## ARTICLE XII

### VACATIONS

12.0    Vacation rights to be computed on the basis of the employee's period of employment shall be from the employee's date of hire to the time of taking vacation.

12.1    Employees who will have attained the length of service specified in the table below shall be entitled to the corresponding vacation with pay at the rate of eight (8) hours per day at his basic hourly rate as follows:

| Employment Service Of | Vacation Time Off With Pay |
|---|---|
| 12 months | 1 week |
| 2 years | 2 weeks |
| 8 years | 3 weeks |
| 12 years | 4 weeks |

12.2    Employees to receive full vacation if employed 1500 hours during the vacation year. If employed less than 1500 hours, the vacation shall be computed at the percentage of hours worked over 1500.

12.3    Employees who discontinue service with the Employer at any time during the term of this Agreement shall be paid pro-rata vacation pay at the time of their job severance.

12.4    Such pro-rata vacation shall be based on the vacation provisions set forth herein. No deductions shall be made in calculating vacation pay for absence due to sickness or injury on the job.

12.5    In the case of death, vacation pay shall be paid to the employee's wife, if any.

## ARTICLE XIII

### SENIORITY

13.0    The length of service of the employee with the Employer shall determine the seniority status of the employee.

13.1    The principle of seniority within classification shall be considered, along with the capability of the individual employee to perform the required work of the subject position in all cases of promotions, transfer, decreases or increases of the working force, as well as layoffs and rehirings.

13.2    Preference in changes in status of an employee as herein set forth shall be given to senior employees.

If an employee performs work in more than one classification, his company seniority shall hold in each of such classifications.

All promotions and transfers to vacant positions and new positions within the bargaining unit shall be made in accordance with the rule of seniority, provided the senior employee is capable of performing the work and has the necessary skill and experience.

All employees on promotions shall be subject to a thirty (30) day trial period and shall receive the minimum rate of the classification promoted to, or a ten cents (10¢) per hour increase, whichever is higher. In the event the employee is not retained in the promotion classification prior to expiration of the thirty (30)

AWW000219

day period, he shall be returned to his previous classification and rate. However, if retained beyond the thirty (30) day period, he shall then progress in the rate as provided within the promoted classification.

Any employee who has elected to transfer by reason of seniority may not retransfer for a period of one (1) year thereafter, except with the consent of the Employer. All promotions and transfers shall be accomplished in an orderly fashion considering the needs of the Employer and as expeditiously as possible.

13.3    The Employer shall prepare and maintain, subject to examination and correction by Union representatives, a seniority list by classification to record the status of each employee in the unit. The employees in question, the steward and the grievance committee shall have access to this list, to ascertain the seniority of any particular employee. Each employee shall have the right to correct any error in his seniority status.

The Employer shall furnish a seniority list to the Union and, thereafter, shall furnish a revised list or a list of changes which have occurred; also, a list of employees hired, classification assigned and the rate of pay and any and all increases granted to employees within the bargaining unit.

13.4    Preference in assignment to shift work shall be given to employees having higher seniority within classification.

13.5    Seniority rights of a laid-off employee will continue to accumulate while he is laid off.

13.6    Seniority shall be lost for the following reasons only:

   (a)    Voluntary quitting.

   (b)    Discharge for just cause and cause sustained.

   (c)    Failure to return to work.

   (d)    After a layoff of one (1) year.

   (e)    Failure to report cause of absence from work within five (5) working days from the start of such absence unless there is a reasonable excuse for such absence and for such failure to notify the Employer.

13.7    Shop Steward, provided he is employed for one (1) year or more, while in office, and a committeeman, while in office, shall have top seniority for purposes of layoff and recall only.

## ARTICLE XIV

## LEAVE OF ABSENCE

14.0    Any employee, upon application to the Employer in writing, shall be granted a leave of absence without pay, not to exceed three (3) months, because of official Union business, personal illness or disability, and shall be renewed for an additional three (3) months upon written application by the employee, in which event the Employer shall not unreasonably withhold its consent. Leaves for other personal reasons shall be solely at the Employer's discretion.

14.1    Leaves of absence in excess of six (6) months for reasons set forth in Paragraph 14.0 shall be granted only with the consent of the Employer.

14.2    Prior to, or at the termination of a leave of absence, the employee will, upon application to the

AWW000220

Employer, provided said application is made within three (3) days after date of termination, be returned to his former position. In the event his former position has since been abolished, then the employee will be returned to an equivalent position. In either case, the employee will receive the then prevailing rate of pay for the job to which he has been assigned.

14.3    Employees who obtain a leave of absence fraudulently or who take another job during such leave other than Union activity where leave is granted for same, shall lose all seniority rights and it shall be just cause for dismissal.

14.4    Where leaves of absence are granted by reason of a job-created injury, vacation pay shall accumulate during the period of such leave of absence. Vacation pay shall accumulate up to one (1) year from date of injury, in addition to any pro-rata vacation pay said employee may be entitled to at the time of such job-created injury or illness.

## ARTICLE XV

## DISCHARGE AND DISCIPLINE

15.0    No employee shall be disciplined or discharged without just and proper cause. Said just and proper cause will include, but not by way of limitation, drunkenness, dishonesty, fighting on the job or in the plant, malingering and/or refusal to work along with any co-worker. Any employee who has been discharged shall, if he so requests, be granted an interview with his Shop Steward before he is required to leave the plant in an office or space provided by the Employer for this purpose.

15.1    Should the Employer discipline or discharge an employee, he shall notify the Shop Steward of such discharge within twenty-four (24) hours after the said employee has been discharged and shall advise the Shop Steward of the reason or cause of the discharge of said employee.

15.2    Should any grievance arise between the Employer and an employee or the Union concerning the existence of just and proper cause for a discharge, such grievance must be presented within five (5) working days after said discharge and shall be processed in accordance with the grievance procedure set forth herein.

## ARTICLE XVI

## PICKET LINES

16.0    It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

16.1    It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action if any employee refuses to perform any service which his Employer undertakes to perform as an ally of an Employer or person whose employees are on strike, and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

## ARTICLE XVII

### INJURY ON THE JOB

17.0    In the event that an employee is sent home by a supervisor as a result of an injury incurred while at work, he shall be compensated for the full day's pay for that day.

## ARTICLE XVIII

### HEALTH & WELFARE PLAN, PENSION PLAN AND ANNUITY

18.0    The Employer agrees to pay the amounts as set forth below, for each employee, regular as well as probationary, covered by this Agreement, to the United Wire, Metal and Machine Health and Welfare Fund.

> Effective September 1, 2003  -  $385.00 per month, per employee
> Effective September 1, 2004 - $415.00 per month, per employee
> Effective September 1, 2005 - $450.00 per month, per employee

Payments are to be made monthly, and are to be accompanied by a written list showing the name of the employee, his social security number, his shop number or classification, his weekly wages, and the amount of contribution.  The Employer's contributions to the Fund shall be held, managed and administered in accordance with the current Trust Indenture or as amended hereafter, of the said United Wire, Metal and Machine Health and Welfare Fund, the terms of which the Employer hereby ratifies.  The Employer agrees to furnish to the Fund all records pertaining to the names of employees, social security number, amount of wages paid, the number of hours worked, their family status, new employees hired, the employees whose services are terminated and such other information as may be required by any underwriting insurance company or by the Fund for the proper administration thereof.  The Employer's payroll and other pertinent records may be examined by the Union or the Fund, or their representatives, at reasonable hours, on demand.

It is expressly understood and agreed that the contributions to the United Wire, Metal and Machine Health and Welfare Fund as herein provided, shall not obligate the said Fund to provide the coverage required by the New York State Disability Benefits Law.  The required said benefits shall be provided independently by the Employer, without any deductions from, or contributions by, the employees.

It is expressly agreed that the Union and/or the United Wire, Metal and Machine Pension Fund shall have the right to cover its or their employees in the United Wire, Metal and Machine Health and Welfare Fund, provided that the Union and/or the United Wire, Metal and Machine Pension Fund shall make contributions to the said Fund, but neither the Union nor the United Wire, Metal and Machine Pension Fund shall participate in the selection of Employer-Trustees of the United Wire, Metal and Machine Health and Welfare Fund.  The United Wire, Metal and Machine Health and Welfare Fund may provide coverage for its own employees.

The Employer must, within ten (10) days of any layoff, recall, discharge, death or other change of status, including family status, notify the Welfare Fund so appropriate notice, if required by COBRA, can be sent.

AWWC00222

8.1     The Employer shall contribute toward a pension plan which the Union shall provide for the benefit of each employee covered under the terms of this Agreement in the following manner:

>Effective September 1, 2003  -  $39.00 per week, per employee
>Effective September 1, 2004  -  $44.00 per week, per employee
>Effective September 1, 2005  -  $49.00 per week, per employee

The contributions to the Fund shall be held, managed and administered in accordance with the current Trust Indenture or as amended hereafter, of the said United Wire, Metal and Machine Pension Fund, the terms of which the Employer hereby ratifies. The Employer agrees to furnish to the Fund all records pertaining to employees, which may be required by the Fund for the proper administration thereof and the payroll and other pertinent records of the Employer may be examined by the Union or the Fund, or their representatives, at reasonable hours, on demand.

It is expressly agreed that the Union and/or the United Wire, Metal and Machine Health and Welfare Fund shall have the right to cover its or their employees in the United Wire, Metal and Machine Pension Fund, provided that the Union and/or the United Wire, Metal and Machine Health and Welfare Fund shall make contributions to the said Fund, but neither the Union nor the United Wire, Metal and Machine Health and Welfare Fund shall participate in the selection of Employer-Trustees of the United Wire, Metal and Machine Pension Fund. The United Wire, Metal and Machine Pension Fund may provide coverage for its own employees.

18.2    In the event the Employer defaults in the payment of the contributions to either the United Wire, Metal and Machine Health and Welfare Fund or the United Wire Metal and Machine Pension Fund, or both, enforcement may be had by either the Union or the Trustees of the respective Fund, in which event the Employer shall pay, in addition to the amount due, reimbursement for all costs and expenses incurred by the Union or the Trustees of the Fund, in arbitration, suit or enforcement thereof, including reasonable counsel fees, accountant's or auditors fees, disbursements and interest.

In the event the Employer defaults in the payment of contributions herein provided to be made to the United Wire, Metal and Machine Health and Welfare Fund or the United Wire, Metal and Machine Pension Fund, or both, the Union may authorize a work stoppage against the Employer. This paragraph, however, shall not be applicable if the Employer's failure to pay is due to a legitimate disagreement over an audit, or a claim of arithmetic error.

Notwithstanding any other provision of this Agreement relating to arbitration, the parties specifically agree that any claim made by the Union for failure by the Employer to pay contributions to the United Wire, Metal and Machine Health and Welfare Fund or to the United Wire, Metal and Machine Pension Fund, or for failure to pay initiation fees and/or dues to the Union, or all of them, may be submitted by the said Welfare Fund or Pension Fund or by the Union, upon three (3) days' notice by mail, to arbitration as hereinbelow provided.

AWM000223

## ARTICLE XIX

### UNION REPRESENTATION

19.0    The Employer agrees to recognize the shop steward, and business representatives of the Union as the official representatives of the Union, in connection with any problem which may arise between the Employer and the Union under this Agreement and shall make such arrangements for the shop representatives to properly and expeditiously carry on their Union duties for disposition of any problems.

19.1    The Union agrees that it will, from time to time, advise the Employer in writing of the names of the Shop Steward and business representative  who have been authorized to act on behalf of the Union.  If and when changes are made, the Union will notify the Employer of such changes.  There shall be no less than the Shop Steward.

19.2    The Shop Steward shall receive their regular straight time pay for time spent during their working hours in contract negotiations and investigating or settling grievances in accordance with the Grievance and Arbitration (Steward only) procedures set forth herein in this Agreement.

19.3    Representatives of the Union who are not employees of the Employer shall have the right to visit the personnel office and plant of the Employer for the purpose of carrying out the terms of this Agreement, provided the Company is advised of their presence.

## ARTICLE XX

### GRIEVANCE PROCEDURE

20.0    All differences, disputes and grievances that may arise from time to time between the Union and the Employer or between any employee in the bargaining unit and the Employer shall be regarded as a "grievance" and settled in accordance with the following procedures:

20.1    The dispute or grievance shall be in the first instance taken up by the Shop Steward, the aggrieved employee and the foreman of the department involved.  If no satisfactory settlement is reached within eight (8) hours, then:

20.2    The shop committee shall present and discuss each grievance with an authorized representative of the Employer.  If no satisfactory settlement is reached between them within two (2) days, then:

20.3    The shop committee, together with an authorized representative of the Union, shall meet and discuss the grievance with the fully authorized representative of the Employer.

20.4    In the event that the grievance has not been settled to the satisfaction of the parties by the procedures hereinabove set forth, then and in that event, either party shall, upon written notice, have the right and authority to submit such grievance to arbitration in the manner and procedure as hereinafter provided. The aggrieved employee may be present at all of the above steps, if necessary.

AWW000224

## ARTICLE XXI

## ARBITRATION PROCEDURE

21.0    All differences, disputes or grievances that shall not have been settled satisfactorily in accordance with the grievance procedure herein provided shall, at the request of either party, be submitted to arbitration before the New York State Employment Relations Board.

21.1    The fees and expenses of the Arbitrator shall be shared equally by the parties hereto.

21.2    The decision or award of the Arbitrator shall be final and binding upon the parties hereto.

## ARTICLE XXII

## STRIKE AND LOCKOUT

22.0    The Union will not call or sanction any strike or concerted stoppage during the term of this Agreement except for (1) the Employer's failure to abide by the arbitration clause of this Agreement; or (2) the Employer's failure to comply with any decision of any Board of Arbitration established hereunder within five (5) days after such decision of a Board of Arbitration. It is further agreed that this section and the termination provisions of this Agreement shall not be operative in the event that the Employer fails to make the prescribed contributions and reports are provided and in accordance with this Collective Bargaining Agreement.

22.1    Should a strike or concerted stoppage of work by employees of the Employer, other than those permitted by Section 22.0 hereof, occur during the term of this Agreement, the Union, within twenty-four (24) hours after receipt of written notice from the Employer, shall be obliged to do the following things only:

    (a)    Advise the Employer in writing that the strike or stoppage has not been called or sanctioned by the Union;

    (b)    Post copies of the following notice on bulletin boards in the plant:

> "We have been advised by MIDTOWN AIR CONDITIONING, INC, Division of Ilam Industries, Ltd.. that a strike (stoppage) has occurred in the plant. Inasmuch as no strike or stoppage has been called or sanctioned by the Union, if you are engaged in any such strike or stoppage, you are hereby instructed to return to work immediately.
>
> LOCAL 810, STEEL, METALS, ALLOYS AND HARDWARE FABRICATORS AND WAREHOUSEMEN, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS
>
> _____
>
> THIS NOTICE IS POSTED IN ACCORDANCE WITH THE PROVISIONS OF THE AGREEMENT BETWEEN THE EMPLOYER AND THE UNION."

AKW000225

(c)    The Employer may, at its sole discretion, mail this notice to the employees, or if the Employer requires the Union to do so, the Union shall mail to all employees a copy of said notice, and the Employer will pay the Union the cost of postage therefor. If, after the above procedure, the employees are not back at work, the Employer may, at its sole discretion, take disciplinary action up to and including dismissal.

22.2    The obligation of the Union shall be limited to the performance of the acts by Paragraph 22.1 and upon compliance by the Union with the provisions of Paragraph 22.1 of this Agreement, the Union and its Officers, agents and members shall have no further liability.

22.3    The Employer will not lock out any or all of its employees during the term of this Agreement.

## ARTICLE XXIII

## BULLETIN BOARDS AND TELEPHONE

23.0    The Employer shall provide bulletin boards for exclusive use by the Union.

23.1    A telephone shall be made available to the Shop Steward for the purpose of communicating with the Union.

## ARTICLE XXIV

## ALTERATION OF AGREEMENT

24.0    It is understood and agreed that no agreement, alteration, understanding, variation, waiver or modification of any of the terms or conditions or covenants contained herein shall be made by any employee or group of employees with the Employer, and in no case shall it be binding upon the parties hereto unless made and executed in writing between the parties hereto.

## ARTICLE XXV

## MOURNING PERIOD

25.0    Each employee shall be entitled to two (2) days mourning period with full pay in the event of a death in his immediate family. This time is to be used to assist in the funeral arrangements and for attending the funeral itself. The Employer may require the employee to provide a copy of a newspaper obituary or death notice, if circumstances so dictate. Immediate family shall consist of spouse, children, father, mother, brother or sister. Each employee shall be entitled to one (1) day off to attend the funeral of mother-in-law and father-in-law.

## ARTICLE XXVI

## SICK LEAVE

26.0    Employees shall be entitled to six (6) paid sick leave days off each year of the Agreement. Employees shall receive the monetary equivalent of any unused sick days at the end of each year.

AHW000226

## ARTICLE XXVII

## UNIFORMS

27.0      The Employer shall provide uniforms for the service mechanics.

## ARTICLE XXVIII

## POSTING

28.0      The Employer will post a listing of all jobs, classifications and date of hire of all employees, with a copy to the Union.

## ARTICLE XXIX

## BARGAINING UNIT WORK

29.0      The work of the employees covered by this Agreement shall consist of all heating, air conditioning, ventilating, refrigeration, cooling, power apparatus and machinery of every description, including the unloading, handling by hand and power equipment, and the manufacture, fabrication, assembly, erection, installation, dismantling, reconditioning, adjustment, alteration, repairing and servicing of all sheet metal, piping and duct work of every description, together with its accompanying fittings, valves and appurtenances which joins together the several parts of all the aforesaid apparatus and machinery, regardless of whether such systems convey air, steam, water, brine, ammonia, oil or other liquids or any commercial product, or any product in the course of manufacture.

## ARTICLE XXX

## CAPTIONS

30.0      Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Agreement, nor the intent of any provision thereof.

## ARTICLE XXXI

## LIE DETECTOR

31.0      The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

## ARTICLE XXXII

## EMPLOYER NOTICE OBLIGATION/LIABILITY

32.0      Failure by an Employer to provide written notification to the Board of any change in employment status of any covered employee may result in such Employer being held responsible for all claims, payments or costs incurred by, or in respect of, such covered employee or such covered employee's dependents after the covered employee's termination date with such Employer.

AWW000227

## ARTICLE XXXIII

## TERM OF AGREEMENT

32.0     This Agreement shall be effective from September 1, 2003 and remain in effect until August 31, 2006 and thereafter shall be renewed from year to year unless at least sixty (60) days prior to termination of any yearly period either party shall serve on the other written notice that it desires to make a change therein.

32.1     In the event of a proposed change, both parties hereto agree to arrange a conference between them to be held within ten (10) days after the service of such notice for the purpose of negotiating the proposed change or changes.

32.2     Any new Agreement resulting from negotiations hereinabove described shall be deemed to be effective as of the day immediately following the termination date of this Agreement.

## ARTICLE XXXIV

## SAVING CLAUSE

33.0     In the event that any Federal or State legislation, government regulations or court decision cause invalidation of any Article or Section of this Agreement, all other Articles and Sections not so invalidated shall remain in full force and effect.

33.1     Upon a clause being so invalidated, the parties to this Agreement shall meet in order to negotiate a replacement of no less than equal value of the clause so invalidated.  If the parties fail to reach agreement as to a replacement clause, the matter may be submitted to arbitration as provided for in this Agreement.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this _____ day of _____ __, 2003.

MIDTOWN AIR CONDITIONING, INC.
Division of Ilam Industries, Ltd.



LOCAL 810, STEEL, METALS, ALLOYS AND HARDWARE FABRICATORS AND WAREHOUSEMEN , affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS

BY: _____
       Louis Smith, President

Recommended by:

_____
John Mascali, Delegate

Committee:

_____

_____

_____

AWW000228

## MIDTOWN AIR CONDITIONING, INC.
### Division of Ilam Industries, Ltd.

### SCHEDULE "A"

### WAGE SCHEDULE AND CLASSIFICATIONS

| CLASSIFICATION | Starting Rate as of 9/1/2003 | Starting Rate as of 3/1/2004 | Starting Rate as of 9/1/2004 | Starting Rate as of 3/1/2005 | Starting Rate as of 9/1/2005 | Starting Rate as of 3/1/2006 |
|---|---|---|---|---|---|---|
| Foreman | 18.40 | 19.00 | 19.85 | 20.30 | 21.15 | 21.55 |
| Service Manager | 19.40 | 20.00 | 20.85 | 21.30 | 22.15 | 22.55 |
| Service Mechanic | 14.40 | 15.00 | 15.85 | 16.30 | 17.15 | 17.55 |
| Service Helper | 12.40 | 13.00 | 13.85 | 14.30 | 15.15 | 15.55 |
| Sheet Metal Mechanic | 15.40 | 16.00 | 16.85 | 17.30 | 18.15 | 18.55 |
| Sheet Metal Helper | 12.40 | 13.00 | 13.85 | 14.30 | 15.15 | 15.55 |
| Piping Mechanic | 14.40 | 15.00 | 15.85 | 16.30 | 17.15 | 17.55 |
| Controller | 14.40 | 15.00 | 15.85 | 16.30 | 17.15 | 17.55 |
| Draftsperson | 14.40 | 15.00 | 15.85 | 16.30 | 17.15 | 17.55 |
| Estimator | 14.40 | 15.00 | 15.85 | 16.30 | 17.15 | 17.55 |
| Driver | 13.40 | 14.00 | 14.85 | 15.30 | 16.15 | 16.55 |
| | | | | | | |

ANW000229

# EXHIBIT B

# LOCAL 810, I.B.T.

## AGREEMENT WITH

## MIDTOWN AIR CONDITIONING, INC.
### Division of Ilam Industries, Ltd.

## September 15, 2000 - August 31, 2003

Local 810, I.B.T.
10 East 15th Street
New York, New York 10003
Telephone No.: (212) 691-4100

Louis Smith, President

AWW000195

### MIDTOWN AIR CONDITIONING, INC.
### Division of Ilam Industries, Ltd.

### C L A U S E S

|  | ARTICLE |
|---|---|
| Recognition | I |
| Bargaining Unit | II |
| Coverage | III |
| No Discrimination | IV |
| Union Status | V |
| Checkoff | VI |
| New Employees | VII |
| Hours of Work | VIII |
| Overtime | IX |
| Wages and Classifications | X |
| Holidays | XI |
| Vacations | XII |
| Seniority | XIII |
| Leave of Absence | XIV |
| Discharge | XV |
| Picket Lines | XVI |
| Injury on the Job | XVII |
| Health and Welfare Plan, Pension Plan and Annuity | XVIII |
| Union Representation | XIX |
| Grievance Procedure | XX |
| Arbitration Procedure | XXI |
| Strike and Lockout | XXII |
| Bulletin Boards and Telephone | XXIII |
| Alteration of Agreement | XXIV |
| Mourning Period | XXV |
| Sick Leave | XXVI |
| Uniforms | XXVII |
| Posting | XXVIII |
| Bargaining Unit Work | XXIX |
| Captions | XXX |
| Lie Detector Test | XXXI |
| Term of Agreement | XXXII |
| Saving Clause | XXXIIII |
| Schedule "A" - Wage Schedule and Classifications | |

AWK000196

**MIDTOWN AIR CONDITIONING, INC.**
**Division of Ilam Industries, Ltd.**

**I N D E X**

| | |
|---|---|
| Alteration of Agreement | 12 |
| Arbitration Procedure | 11 |
| Bargaining Unit Work | 13 |
| Bargaining Unit | 1 |
| Bulletin Boards and Telephone | 12 |
| Captions | 13 |
| Checkoff | 2 |
| Coverage | 1 |
| Discharge and Discipline | 7 |
| Grievance Procedure | 10 |
| Health & Welfare Plan, Pension Plan and Annuity | 8 |
| Holidays | 4 |
| Hours of Work | 3 |
| Injury on the Job | 8 |
| Leave of Absence | 6 |
| Lie Detector | 13 |
| Mourning Period | 12 |
| New Employees | 2 |
| No Discrimination | 1 |
| Overtime | 3 |
| Picket Lines | 7 |
| Posting | 13 |
| Recognition | 1 |
| Saving Clause | 14 |
| Seniority | 5 |
| Sick Leave | 12 |
| Strike and Lockout | 11 |
| Term of Agreement | 13 |
| Uniforms | 13 |
| Union Representation | 10 |
| Union Status | 2 |
| Vacations | 5 |
| Wage Schedule and Classifications | 15 |
| Wages and Classifications | 3 |

ANW000197

**AGREEMENT MADE AND ENTERED INTO** as of the 15th day of September, 2000, by and between **MIDTOWN AIR CONDITIONING, INC.,**, Division of Ilam Industries, Ltd. of 545 8th Avenue, New York, New York 10018, hereinafter referred to as the **"Employer"** and **LOCAL 810, STEEL, METALS, ALLOYS AND HARDWARE FABRICATORS AND WAREHOUSEMEN,** affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, of 10 East 15th Street, New York, New York 10003, its successors or assigns, hereinafter referred to as the **"Union"**.

## PURPOSE

The purpose of this Agreement is to establish mutual understanding and a harmonious relationship between the Employer and the Union, so that continuous and efficient service may be rendered to the Employer and a fair standard of terms and conditions of employment may be guaranteed to the employees.

## NOW, THEREFORE, BE IT AGREED

## ARTICLE I

## RECOGNITION

1.0      The Employer recognizes the Union as the sole and exclusive bargaining agent for the purposes of bargaining in respect to rates of pay, wages, hours of employment and all other conditions pertaining to employment of all of the employees in the bargaining unit hereinafter set forth.

## ARTICLE II

## BARGAINING UNIT

22.0      The following shall be the appropriate collective bargaining unit: All production and maintenance employees as set forth in Schedule "A".

## ARTICLE III

## COVERAGE

3.0      The terms and conditions of employment contained in this Agreement shall be binding upon the successors and assigns of the Employer. The Employer shall be individually liable for the compliance with the terms and conditions herein.

## ARTICLE IV

## NO DISCRIMINATION

4.0      In accordance with applicable law, the Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, pregnancy, or age, nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, pregnancy or age.

4.1      The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's lawful activity and/or support of the Union.

AWW000198

4.2     The term "he" or "his" as used in this Agreement is not meant to be discriminatory and shall apply equally to male and female employees.

## ARTICLE V

## UNION STATUS

5.0     It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the execution date of this Agreement shall remain members in good standing, and those who are not shall, on or after the thirtieth (30th) working day following the said date, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered hereunder and hired on or after the execution date hereof, shall, on or after the thirtieth (30th) working day following the beginning of such employment, become and remain members in good standing in the Union.

## ARTICLE VI

## CHECKOFF

6.0     The Employer agrees that during the full term of this Agreement and any extension or renewal thereof, it will deduct in the first week in every month from the earnings of the employees who have so authorized, in writing, and in accordance with the provisions of said authorization, membership dues (which term includes initiation fees) and remit the same to the Union. The remittance shall be accompanied by a list showing individual names and amounts deducted. The total remittances are to be made not later than the fifteenth (15th) day of the same month. The Union shall advise the Employer of the amount of initiation fees and dues and the manner in which the same shall be deducted.

6.1     The Employer shall notify the Union of all new employees covered by this Agreement, within seven (7) days after hire giving name, address, social security number and date of hire.

6.2     In the event an employee or the Union provides the Company with a valid checkoff card, and the Company fails to check off the initiation fee and dues as required under the provisions of the collective bargaining agreement, the Company agrees that if the employee leaves the employ of the Company before such checkoff can be made, the Company will remit the amount it failed to check off, but reserves the right to seek indemnification from the former employee.

## ARTICLE VII

## NEW EMPLOYEES

7.0     All new employees engaged by the Employer shall be deemed for the first forty-five (45) working days of their employment to be engaged for a trial period. All such new employees may be laid off or dismissed during such trial period for any reason whatsoever. After the said trial period, all employees shall be deemed to be regular employees covered by the terms of this Agreement, and their seniority shall revert back to the date of hire.

AWK000199

## ARTICLE VIII

## HOURS OF WORK

8.0    The normal work week shall be forty (40) hours per week, consisting of five (5) days of eight (8) hours per day, exclusive of the lunch period.

8.1    The regular work week shall be from Monday to Friday, inclusive.

8.2    The regular work shift shall start at 7:30 A.M.  The lunch period shall be one-half (½) hour in duration, between the hours of 11:30 A.M. to 1:30 P.M.

8.3    Starting time may be changed by the Employer by giving the employees and the Union twenty-four (24) hours notice.

Notice shall be given to the employees by posting the same on the bulletin board.  The twenty-four (24) hour notice may be waived where it will cause undue hardship on the Employer.  The Union shall have the right to utilize the grievance procedure if such change creates an undue hardship on the employees.

8.4    Call-In Time:  In the event an employee reports for work on his regular shift without having been previously notified not to report, he shall be given two (2) hours work, or if no work is available, he shall be given two (2) hours pay.

8.5    Call-Back Time:  Any employee called back to work after the termination of his regular shift who has left the plant and the Employer's grounds shall receive no less than three (3) hours work.

## ARTICLE IX

## OVERTIME

9.0    All overtime shall be paid at the rate of time and one-half (1½) the regular straight time rate.

9.1    In addition to the holiday pay, time and one-half (1½) shall be paid for all work performed on any of the holidays as designated in Article XI, Holidays, herein in this Agreement.

9.2    Employees working the second shift shall receive a ten percent (10%) increase over their regular rates.

9.3    Employees shall receive overtime pay if driving more than one and one-half (1½) to and from a job.

## ARTICLE X

## WAGES AND CLASSIFICATIONS

10.0    All employees employed on the dates specified shall receive the following wage increases:

| September 1, 2000 | Fifty Cents (50¢) | April 1, 2002 | Fifty Cents (50¢) |
| April 1, 2001 | Fifty Cents (50¢) | September 1, 2002 | Fifty Cents (50¢) |
| September 1, 2001 | Fifty Cents (50¢) | April 1, 2003 | Fifty Cents (50¢) |

Midtown:9/2000                                    3

AWW000200

10.1     The aforesaid general increases shall be added to the starting and minimum rates as provided in Exhibit "A" annexed hereto.

10.2     Employees working outside of the shop shall be compensated as has been the custom and practice of the Employer as heretofore.  Outside the shop shall mean employees working outside of the metropolitan area.

10.3     No employee shall suffer a reduction in pay or other economic benefits as a result of the signing of this Agreement for the term hereof.

Employees working in more than one classification will be paid the rate of the highest classification.

10.4     The Employer shall notify the Shop Steward of the name, classification and starting rate of each employee.  No new employee shall be hired at less than the minimum rate for his classification as provided in Exhibit "A".

## ARTICLE XI

## HOLIDAYS

11.0     All employees covered by this Agreement shall receive holiday pay for each of the following designated holidays not worked, irrespective of the day of the week on which the holiday may fall, at the rate of eight (8) hours pay at their base rates of pay or in the case of employees who are regularly scheduled eight (8) hours per day, eight (8) hours at their base rate of pay.

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| Presidents' Day | Day After Thanksgiving |
| Memorial Day | Christmas Eve (½ Day) |
| Independence Day | Christmas Day |
| Labor Day | New Year's Eve (½ Day) |

Above holidays may be substituted for other days by agreement of the Employer and employees.

Employees employed for a period up to ten (10) years shall be entitled to one (1) personal day off with pay each year of the Agreement.  Employees employed ten (10) years or more shall be entitled to two (2) personal days off with pay each year of the Agreement.

11.1     In addition to the payment of time and one-half for hours worked on any of the above designated holidays as provided in overtime provisions, all employees working on such holidays shall receive holiday pay as set forth in Article 11.0 hereinabove.

11.2     Any of the specified holidays falling on a Sunday shall be celebrated the following day (Monday) and the above mentioned requirements of time or pay shall be applicable in such case to Monday instead of Sunday.

AWK000201

## ARTICLE XII

## VACATIONS

12.0    Vacation rights to be computed on the basis of the employee's period of employment shall be from the employee's date of hire to the time of taking vacation.

12.1    Employees who will have attained the length of service specified in the table below shall be entitled to the corresponding vacation with pay at the rate of eight (8) hours per day at his basic hourly rate as follows:

| Employment Service Of | Vacation Time Off With Pay |
|---|---|
| 12 months | 1 week |
| 2 years | 2 weeks |
| 8 years | 3 weeks |
| 12 years | 4 weeks |

12.2    Employees to receive full vacation if employed 1500 hours during the vacation year.  If employed less than 1500 hours, the vacation shall be computed at the percentage of hours worked over 1500.

12.3    Employees who discontinue service with the Employer at any time during the term of this Agreement shall be paid pro-rata vacation pay at the time of their job severance.

12.4    Such pro-rata vacation shall be based on the vacation provisions set forth herein.  No deductions shall be made in calculating vacation pay for absence due to sickness or injury on the job.

12.5    In the case of death, vacation pay shall be paid to the employee's wife, if any.

## ARTICLE XIII

## SENIORITY

13.0    The length of service of the employee with the Employer shall determine the seniority status of the employee.

13.1    The principle of seniority within classification shall be considered, along with the capability of the individual employee to perform the required work of the subject position in all cases of promotions, transfer, decreases or increases of the working force, as well as layoffs and rehirings.

13.2    Preference in changes in status of an employee as herein set forth shall be given to senior employees.

If an employee performs work in more than one classification, his company seniority shall hold in each of such classifications.

All promotions and transfers to vacant positions and new positions within the bargaining unit shall be made in accordance with the rule of seniority, provided the senior employee is capable of performing the work and has the necessary skill and experience.

All employees on promotions shall be subject to a thirty (30) day trial period and shall receive the minimum rate of the classification promoted to, or a ten cents (10¢) per hour increase, whichever is higher.

AWW000202

In the event the employee is not retained in the promotion classification prior to expiration of the thirty (30) day period, he shall be returned to his previous classification and rate. However, if retained beyond the thirty (30) day period, he shall then progress in the rate as provided within the promoted classification.

Any employee who has elected to transfer by reason of seniority may not retransfer for a period of one (1) year thereafter, except with the consent of the Employer. All promotions and transfers shall be accomplished in an orderly fashion considering the needs of the Employer and as expeditiously as possible.

13.3    The Employer shall prepare and maintain, subject to examination and correction by Union representatives, a seniority list by classification to record the status of each employee in the unit. The employees in question, the steward and the grievance committee shall have access to this list, to ascertain the seniority of any particular employee. Each employee shall have the right to correct any error in his seniority status.

The Employer shall furnish a seniority list to the Union and, thereafter, shall furnish a revised list or a list of changes which have occurred; also, a list of employees hired, classification assigned and the rate of pay and any and all increases granted to employees within the bargaining unit.

13.4    Preference in assignment to shift work shall be given to employees having higher seniority within classification.

13.5    Seniority rights of a laid-off employee will continue to accumulate while he is laid off.

13.6    Seniority shall be lost for the following reasons only:

    (a)    Voluntary quitting.

    (b)    Discharge for just cause and cause sustained.

    (c)    Failure to return to work.

    (d)    After a layoff of one (1) year.

    (e)    Failure to report cause of absence from work within five (5) working days from the start of such absence unless there is a reasonable excuse for such absence and for such failure to notify the Employer.

13.7    Shop Steward, provided he is employed for one (1) year or more, while in office, and a committeeman, while in office, shall have top seniority for purposes of layoff and recall only.

## ARTICLE XIV

## LEAVE OF ABSENCE

14.0    Any employee, upon application to the Employer in writing, shall be granted a leave of absence without pay, not to exceed three (3) months, because of official Union business, personal illness or disability, and shall be renewed for an additional three (3) months upon written application by the employee, in which event the Employer shall not unreasonably withhold its consent. Leaves for other personal reasons shall be solely at the Employer's discretion.

14.1    Leaves of absence in excess of six (6) months for reasons set forth in Paragraph 14.0 shall be granted only with the consent of the Employer.

Midtown:9/2000                                6

AWW000203

14.2     Prior to, or at the termination of a leave of absence, the employee will, upon application to the Employer, provided said application is made within three (3) days after date of termination, be returned to his former position. In the event his former position has since been abolished, then the employee will be returned to an equivalent position. In either case, the employee will receive the then prevailing rate of pay for the job to which he has been assigned.

14.3     Employees who obtain a leave of absence fraudulently or who take another job during such leave other than Union activity where leave is granted for same, shall lose all seniority rights and it shall be just cause for dismissal.

14.4     Where leaves of absence are granted by reason of a job-created injury, vacation pay shall accumulate during the period of such leave of absence. Vacation pay shall accumulate up to one (1) year from date of injury, in addition to any pro-rata vacation pay said employee may be entitled to at the time of such job-created injury or illness.

## ARTICLE XV

## DISCHARGE AND DISCIPLINE

15.0     No employee shall be disciplined or discharged without just and proper cause. Said just and proper cause will include, but not by way of limitation, drunkenness, dishonesty, fighting on the job or in the plant, malingering and/or refusal to work along with any co-worker. Any employee who has been discharged shall, if he so requests, be granted an interview with his Shop Steward before he is required to leave the plant in an office or space provided by the Employer for this purpose.

15.1     Should the Employer discipline or discharge an employee, he shall notify the Shop Steward of such discharge within twenty-four (24) hours after the said employee has been discharged and shall advise the Shop Steward of the reason or cause of the discharge of said employee.

15.2     Should any grievance arise between the Employer and an employee or the Union concerning the existence of just and proper cause for a discharge, such grievance must be presented within five (5) working days after said discharge and shall be processed in accordance with the grievance procedure set forth herein.

## ARTICLE XVI

## PICKET LINES

16.0     It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

16.1     It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action if any employee refuses to perform any service which his Employer undertakes to perform as an ally of an Employer or person whose employees are on strike, and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

AWW000204

## ARTICLE XVII

### INJURY ON THE JOB

17.0     In the event that an employee is sent home by a supervisor as a result of an injury incurred while at work, he shall be compensated for the full day's pay for that day.

## ARTICLE XVIII

### HEALTH & WELFARE PLAN, PENSION PLAN AND ANNUITY

18.0     The Employer agrees to pay the amounts as set forth below, for each employee, regular as well as probationary, covered by this Agreement, to the United Wire, Metal and Machine Health and Welfare Fund.

Effective September 1, 2000 - $320.00 per month, per employee
Effective September 1, 2001 - $340.00 per month, per employee
Effective September 1, 2002 - $360.00 per month, per employee

Payments are to be made monthly, and are to be accompanied by a written list showing the name of the employee, his social security number, his shop number or classification, his weekly wages, and the amount of contribution. The Employer's contributions to the Fund shall be held, managed and administered in accordance with the current Trust Indenture or as amended hereafter, of the said United Wire, Metal and Machine Health and Welfare Fund, the terms of which the Employer hereby ratifies. The Employer agrees to furnish to the Fund all records pertaining to the names of employees, social security number, amount of wages paid, the number of hours worked, their family status, new employees hired, the employees whose services are terminated and such other information as may be required by any underwriting insurance company or by the Fund for the proper administration thereof. The Employer's payroll and other pertinent records may be examined by the Union or the Fund, or their representatives, at reasonable hours, on demand.

It is expressly understood and agreed that the contributions to the United Wire, Metal and Machine Health and Welfare Fund as herein provided, shall not obligate the said Fund to provide the coverage required by the New York State Disability Benefits Law. The required said benefits shall be provided independently by the Employer, without any deductions from, or contributions by, the employees.

It is expressly agreed that the Union and/or the United Wire, Metal and Machine Pension Fund shall have the right to cover its or their employees in the United Wire, Metal and Machine Health and Welfare Fund, provided that the Union and/or the United Wire, Metal and Machine Pension Fund shall make contributions to the said Fund, but neither the Union nor the United Wire, Metal and Machine Pension Fund shall participate in the selection of Employer-Trustees of the United Wire, Metal and Machine Health and Welfare Fund. The United Wire, Metal and Machine Health and Welfare Fund may provide coverage for its own employees.

The Employer must, within ten (10) days of any layoff, recall, discharge, death or other change of status, including family status, notify the Welfare Fund so appropriate notice, if required by COBRA, can be sent.

AWW000205

(c)    The Employer may, at its sole discretion, mail this notice to the employees, or if the Employer requires the Union to do so, the Union shall mail to all employees a copy of said notice, and the Employer will pay the Union the cost of postage therefor. If, after the above procedure, the employees are not back at work, the Employer may, at its sole discretion, take disciplinary action up to and including dismissal.

22.2    The obligation of the Union shall be limited to the performance of the acts by Paragraph 22.1 and upon compliance by the Union with the provisions of Paragraph 22.1 of this Agreement, the Union and its Officers, agents and members shall have no further liability.

22.3    The Employer will not lock out any or all of its employees during the term of this Agreement.

### ARTICLE XXIII

### BULLETIN BOARDS AND TELEPHONE

23.0    The Employer shall provide bulletin boards for exclusive use by the Union.

23.1    A telephone shall be made available to the Shop Steward for the purpose of communicating with the Union.

### ARTICLE XXIV

### ALTERATION OF AGREEMENT

24.0    It is understood and agreed that no agreement, alteration, understanding, variation, waiver or modification of any of the terms or conditions or covenants contained herein shall be made by any employee or group of employees with the Employer, and in no case shall it be binding upon the parties hereto unless made and executed in writing between the parties hereto.

### ARTICLE XXV

### MOURNING PERIOD

25.0    Each employee shall be entitled to two (2) days mourning period with full pay in the event of a death in his immediate family. This time is to be used to assist in the funeral arrangements and for attending the funeral itself. The Employer may require the employee to provide a copy of a newspaper obituary or death notice, if circumstances so dictate. Immediate family shall consist of spouse, children, father, mother, brother or sister. Each employee shall be entitled to one (1) day off to attend the funeral of mother-in-law and father-in-law.

### ARTICLE XXVI

### SICK LEAVE

26.0    Employees shall be entitled to six (6) paid sick leave days off each year of the Agreement. Employees shall receive the monetary equivalent of any unused sick days at the end of each year.

AWK000209

## ARTICLE XXVII

## UNIFORMS

27.0    The Employer shall provide uniforms for the service mechanics.

## ARTICLE XXVIII

## POSTING

28.0    The Employer will post a listing of all jobs, classifications and date of hire of all employees, with a copy to the Union.

## ARTICLE XXIX

## BARGAINING UNIT WORK

29.0    The work of the employees covered by this Agreement shall consist of all heating, air conditioning, ventilating, refrigeration, cooling, power apparatus and machinery of every description, including the unloading, handling by hand and power equipment, and the manufacture, fabrication, assembly, erection, installation, dismantling, reconditioning, adjustment, alteration, repairing and servicing of all sheet metal, piping and duct work of every description, together with its accompanying fittings, valves and appurtenances which joins together the several parts of all the aforesaid apparatus and machinery, regardless of whether such systems convey air, steam, water, brine, ammonia, oil or other liquids or any commercial product, or any product in the course of manufacture.

## ARTICLE XXX

## CAPTIONS

30.0    Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Agreement, nor the intent of any provision thereof.

## ARTICLE XXXI

## LIE DETECTOR

31.0    The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

## ARTICLE XXXII

## TERM OF AGREEMENT

32.0    This Agreement shall be effective from September 15, 2000 and remain in effect until August 31, 2003 and thereafter shall be renewed from year to year unless at least sixty (60) days prior to termination of any yearly period either party shall serve on the other written notice that it desires to make a change therein.

32.1    In the event of a proposed change, both parties hereto agree to arrange a conference between them to be held within ten (10) days after the service of such notice for the purpose of negotiating the proposed change or changes.

AWKC00210

32.2     Any new Agreement resulting from negotiations hereinabove described shall be deemed to be effective as of the day immediately following the termination date of this Agreement.

## ARTICLE XXXIII

## SAVING CLAUSE

33.0     In the event that any Federal or State legislation, government regulations or court decision cause invalidation of any Article or Section of this Agreement, all other Articles and Sections not so invalidated shall remain in full force and effect.

33.1     Upon a clause being so invalidated, the parties to this Agreement shall meet in order to negotiate a replacement of no less than equal value of the clause so invalidated. If the parties fail to reach agreement as to a replacement clause, the matter may be submitted to arbitration as provided for in this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and seals this _____ day of _____, 2000.

MIDTOWN AIR CONDITIONING, INC.
Division of Ilam Industries, Ltd.

_Ilya Brodsky_

Recommended by:

_John J. Mascali_
John Mascali, Delegate

Committee:

_Alexander Bushteyn_

LOCAL 810, STEEL, METALS, ALLOYS AND HARDWARE FABRICATORS AND WAREHOUSEMEN, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS

BY: _Louis Smith_
Louis Smith, President

AWW000211

Midtown:9/2000                    14