UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANGEL VARGAS, FELIX BONILLA, RYAN MCKENZIE,
BERNARDO RAMIREZ and SIMON NORALES,

                                    Plaintiffs      **Plaintiffs' 56.1 Statement**
           -Against-                                 07-3343

MIDTOWN AIR CONDITION AND
VENTILATION, LTD.,

                                   Defendant
-----------------------------------------------------------X

    Pursuant to Civil Rule 56.1 plaintiffs, through their attorneys, Law Offices of Ambrose Wotorson, state that there are issues of fact that are in dispute, as follows:

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted.
11. Admitted.
12. Admitted.
13. Admitted.
14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted

25. Denied. Rafael Fernandez and Jean Bazile had a meeting with plaintiff and related to plaintiff that there had been a shouting match between Fernandez and Bazile about Fernandez sitting on some drums. (Wotorson Affirmation, Exhibit "14," p.72) Bazile spoke with Plaintiff and with "Pip" Mouyaris and gave his side of the story. Bazile did not deny that he had cursed at the Fernandez. (Wotorson Affirmation, Exhibit "14," p.78-79; Exhibit "4"). No written statements were taken, though plaintiff and "Pip" Mouyaris jointly interviewed employees. Fernandez was ultimately disciplined for disrupting the workplace. (Wotorson Affirmation, Exhibit "14," p.74). Bazile was not disciplined in any regard, as "Pip" Mouyaris instructed plaintiff to not write Bazile up (Wotorson Affirmation, Exhibit "14," p.74-75). As a result, Fernandez claimed that he was being discriminated against because he was written up, while Bazile was not. (Wotorson Affirmation, Exhibit "14," p.74). Fernandez specifically complained to plaintiff and to "Pip" Mouyaris that he was written up because he was Hispanic, and

that Bazile was not written up because he was not Hispanic. (Wotorson Affirmation, Exhibit "14," p.79; Exhibit "4"). When Fernandez got his warning memo, he told plaintiff that he was going to go to the same place that Sanchez went, the Division of Human Rights. Plaintiff told him that "he had his rights as an employee, but that the company did not do any thing wrong. She also told him that he needed to conduct himself professionally. (Wotorson Affirmation, Exhibit "14," p.80; Exhibit "4"). Later, Fernandez did file an administrative Title VII Complaint with the Division of Human Rights. (Wotorson Affirmation, Exhibit "14," p.82).

26. Admitted.

27. Admitted.

28. Denied. On October 2, 2003, plaintiff memorialized another incident between Jean Bazile and Rafael Fernandez. Plaintiff asked asking both parties to reenact the incident. She did speak with Jean to get his side of the story and she documented it. She took notes of her interview with Bazile and summarized it, in the October 2, 2003 memo. (Wotorson Affirmation Exhibits "7" and "14," p.108). In another summary dated October 2, 2003, plaintiff recorded that Fernandez said that he was pleased about the Yoni Sanchez's charge of discrimination against Mana, because no one else is willing to speak up about management's abuse of employees. (Wotorson Affirmation, Exhibit "8"). Plaintiff forwarded October 2, 2003 summaries to Barbara Novick and Nikos Mouyaris. (Wotorson Affirmation, Exhibit "14," p.115). Plaintiff verbally explained to Novick what happened between Fernandez and Bazile, and she recommended that Fernandez be terminated because this was his second incident. Novick wanted to

contact labor counsel, Stanly Schair, to make sure everything was in order before terminating Fernandez. (Wotorson Affirmation, Exhibit "14," p.115-116).

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Denied. Plaintiff prepared a memorandum dated August 4, 2003, regarding Sanchez's informal complaint of discrimination. In the memorandum, plaintiff noted that Yoni Sanchez complained that he was being paid less than Ramon Fernandez, and that this, in his mind, amounted to "discrimination." The memorandum further recorded that plaintiff spoke with ""Pip"" Mouyaris and told him that Sanchez felt that he was being discriminated against. The memorandum recorded that "Pip" Mouyaris became "furious" and stated that everyone in the factory had gotten a fair raise. The memorandum recorded that "Pip" Mouyaris then requested that plaintiff set up a meeting with Sanchez, so that he ("Pip" Mouyaris) could address Sanchez's concerns directly. (Wotorson Affirmation, Exhibits "1" and "2;" "14," p.44). Plaintiff provided a

4

copy of this memorandum to her direct supervisor, Barbara Novick, and also spoke with Novick about Sanchez's "discrimination" complaint. (Wotorson Affirmation, Exhibit "14," p.42 and 49). ).

"Pip" Mouyaris' told Sanchez during a prearranged meeting, that Fernandez made more money that he did because his wages were based upon performance and attendance, Fernandez's attendance was much better than Sanchez' attendance. "Pip" Mouyaris, then explained that this performance disparity fully justified the pay disparity. (Wotorson Affirmation, Exhibit "14," p.37). Sanchez then raised the issue of discrimination while he spoke with "Pip". "Pip" denied that there was any discrimination, and, in fact, he encouraged Sanchez that he could go to the Department of Human Rights or the Department of Labor. (Wotorson Affirmation, Exhibit "14," p.39-40; Exhibit "3). Sanchez did not take the post-it note with the Human Right's telephone number when "Pip" Mouyaris offered it to him. (Wotorson Affirmation, Exhibit "14," p.40 and 46-47; Exhibit "3"). "Pip" wanted to give the telephone number to Sanchez because Sanchez had claimed that he was being discriminated against. (Wotorson Affirmation, Exhibit "15," p. 77-79; Exhibit "3"). It was plaintiff's practice to document such meetings with employees, which she did in this instance. (Wotorson Affirmation, Exhibit "14," p.42). In fact, plaintiff provided a copy of this memorandum to both Barbara Novick and Nikos Mouyaris. (Wotorson Affirmation, Exhibit "14," p.46).

Plaintiff documented that the labor counsel, Stanley Schair, told plaintiff and Barbara Novick that the company needed to have more documentation to justify Sanchez's termination. He explained to them that the only way to "get rid" of Sanchez was to give him something that he could not handle, and to "pretty much set him up for

5

failure." (Wotorson Affirmation. Exhibit "6"). Novick admitted in her deposition that she received summaries of plaintiff's investigative interviews at the end of each month (Wotorson Affirmation, Exhibit "18," p.32). "Pip" Mouyaris also admitted that he received memoranda from plaintiff summarizing her investigative efforts. (Wotorson Affirmation, Exhibit "15," p. 85).

Plaintiff documented that Fernandez complained about discrimination during an investigative meeting. He complained that he was being picked on because he is Hispanic. (Wotorson Affirmation, Exhibit "14," p.101; Exhibit "4"). Novick admitted in her deposition that she received summaries of plaintiff's investigative interviews at the end of each month (Wotorson Affirmation, Exhibit "18," p.32). "Pip" Mouyaris also admitted that he received memoranda from plaintiff summarizing her investigative efforts. (Wotorson Affirmation, Exhibit "15," p. 85).

Plaintiff documented on October 2, 2003, that Fernandez said that he was pleased about the Yoni Sanchez's charge of discrimination against Mana, because no one else is willing to speak up about management's abuse of employees. (Wotorson Affirmation, Exhibit "8"). Plaintiff forwarded this October 2, 2003 investigative summary to Barbara Novick and Nikos Mouyaris. (Wotorson Affirmation, Exhibit "14," p.115).

Nikos Mouyaris also told plaintiff during her termination meeting that her write ups were "too editorial" and that "if they fell into the wrong hands there could be a big problem." (Wotorson Affirmation, Exhibit "14," p.182).

Dated: New York, New York
       May 12, 2008

                                    Respectfully Submitted,
                                    Law Offices of Ambrose W. Wotorson
                                    By:_____/s/_____

Ambrose W. Wotorson (AWW-2412)
26 Court Street, Suite 1811
Brooklyn, New York 11242